

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 6, 2008

**BY HAND**

The Honorable Paul A. Crotty
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   **United States v. Daniel DeJesus Cedeno,**
>         **07 Cr. 964 (PAC)**

Dear Judge Crotty:

The Government respectfully submits this response to the motion to dismiss of defendant Daniel DeJesus Cedeno ("Defendant"). The Defendant argues that the Indictment in this matter should be dismissed on the following grounds: (1) the Indictment is time-barred by the applicable statute of limitations; and (2) the prior felony alleged in the Indictment did not constitute an "aggravated felony" at the time he was deported. The motion is inappropriate on both grounds, as it does not attack the Indictment as facially insufficient, but instead argues facts properly suited for trial and sentencing. Furthermore, the Defendant's claims are meritless. Accordingly, the motion should be denied.

## I. BACKGROUND

Indictment 07 Cr. 964 (PAC) (the "Indictment") was filed on October 16, 2007, containing one count. Count One charged Defendant with illegally re-entering the United States after having been lawfully deported, subsequent to the commission of an aggravated felony, in violation of Title 8, United States Code, Sections 1326(a) and (b)(2). Defendant was arraigned on October 19, 2007 and pled not guilty.

Defendant filed the instant motion on December 14, 2007, asserting two grounds for dismissing the Indictment. First, the Defendant argues that the Indictment is now time-barred because the five-year statute of limitations for the crime charged in the Indictment began running on April 8, 1992, when the Defendant claims he last entered the United States via Miami International Airport. *See* Memorandum of Law in Support of Defendant's Motion to Dismiss the Indictment ("Def.'s Mot.") at 2-3. According to the Defendant, he presented his passport and green card to U.S. immigration officials at the airport, who then inspected him and cleared him

The Honorable Paul A. Crotty
January 6, 2008
Page 2 of 11

for entry. *Id.* at 3. The Defendant argues that U.S. immigration authorities therefore became aware of his presence in this country at that time, and their failure to discover his violation within five years of that date means that the Indictment is time-barred. *Id.* In the alternative, the Defendant argues that the statute of limitations began running at the very least on April 4, 1999, when he was arrested by members of the New York City Police Department ("NYPD") for driving while intoxicated. *Id.* According to the Defendant, had the Immigration and Naturalization Service ("INS") exercised due diligence, they would have come across his arrest record and fingerprints, and could have discovered his illegal reentry. *Id.* Defendant argues that, under these circumstances, he was "found in" the United States at the time of his arrest, thus completing the crime of illegal reentry and triggering the statute of limitations clock, which expired on April 4, 2004, prior to the filing of the Indictment. *See id.*

Second, the Defendant argues that the Indictment should be dismissed because his conviction for assault in the first degree, for which he received a sentence of 1½ to 4½ years' imprisonment, did not constitute an "aggravated felony" as that term was defined under Title 8, United States Code, Section 1101(a)(43), at the time he was deported in 1988. The Defendant asserts that the retroactive application of the current definition of "aggravated felony" to his offense is unconstitutional.[1]

## II. STATEMENT OF FACTS

The Defendant is a citizen of the Dominican Republic who first entered the United States on November 20, 1983, in New York. Affirmation of Christian R. Everdell ("Everdell Aff."), Ex. A. The Defendant entered as a lawful permanent resident, pursuant to a P2-2 visa, which his mother had applied for and had been granted on May 16, 1983.[2] Upon entry to the United States, the Defendant was given the alien registration number ("A-number") A38-501-573, and was eventually issued a permanent resident card (or "green card"). *Id.*, Ex. B.

On March 12, 1986, the Defendant was arrested in Brooklyn, New York, and charged with a top count of attempted murder. On November 12, 1986, the Defendant pleaded guilty in New York Supreme Court, Kings County, to the charge of assault in the first degree, in violation

---

[1]    This second ground for dismissal is not discussed in the Defendant's memorandum of law, but rather is set forth in a perfunctory fashion in the notice of motion without citation to any supporting authority. *See* Motion to Dismiss Indictment.

[2]    A P2-2 visa is available to an unmarried son or daughter of an alien resident in the United States. Declaration of Thomas Kilbride ("Kilbride Decl.") ¶ 3b, attached as Ex. A to Everdell Aff. According to the P2-2 visa application, the Defendant's mother, Miledys Altagracia Medina, was a lawful permanent resident of the United States at the time she submitted the application for the Defendant on April 2, 1983. Everdell Aff., Ex C.

The Honorable Paul A. Crotty
January 6, 2008
Page 3 of 11

of New York Penal Law, Section 120.10, a Class C felony.  On that same day, the Defendant was sentenced to a term of 1½ to 4½ years' imprisonment.  Everdell Aff., Exs. D & E.

As a result of this conviction, an Order to Show Cause was issued on December 1, 1987, charging that the Defendant was deportable from the United States, pursuant to Section 241(a)(4) of the Immigration and Nationality Act, for having been convicted, within five years of entry, of a crime involving moral turpitude resulting in a sentence of a year or more in prison.  *Id.*, Ex. F. On September 6, 1988, an immigration judge found the Defendant deportable as charged in the Order to Show Cause, and the Defendant was deported to the Dominican Republic on September 12, 1988.  *Id.*, Exs. G & H.  The Defendant's green card became invalid at the time he was found deportable, and should have been surrendered to immigration authorities prior to his deportation. Kilbride Decl. ¶ 3f.  Immigration authorities have no evidence that the Defendant did, in fact, surrender his green card as required.  *Id.* ¶ 3g.  There is also no evidence that a new green card was ever issued to the Defendant.  *Id.* ¶ 3h.

At some point prior to his arrest in Brooklyn, New York on April 4, 1999, the Defendant reentered the United States illegally.  The Defendant claims that he reentered the country via Miami International Airport on July 5, 1990, remained in the United States for approximately sixteen months, then left for the Dominican Republic, and then returned to the United States, again via Miami International Airport, on April 8, 1992.  Def.'s Mot. at 2.  Each time he reentered the country, the Defendant asserts that he showed his passport and green card to U.S. immigration officials, who then stamped his passport and allowed him to enter.  *Id.* at 2 & Ex. B. The Defendant further claims that he remained in the United States, at various addresses, since his reentry on April 8, 1992.  *Id.* at 2.

The Defendant's alleged entry into the United States on April 8, 1992, at Miami International Airport, is central to the Defendant's statute of limitations argument and appears to be the only significant factual issue upon which the parties disagree.  The Government does not concede at this time that the Defendant, in fact, entered the United States on that date, as there is no record, other than the alleged passport stamps, that the defendant entered the country via Miami at that time.  *See* Kilbride Decl. ¶ 7.  Moreover, the authenticity of the passport stamps could not be definitively determined by a forensic examination.  Everdell Aff., Ex. K. [3] Nevertheless, even if the stamps are genuine, the statute of limitations did not start running on April 8, 1992, because the Defendant gained entry by presenting an invalid green card that should have been surrendered when he was deported.  The presentation of specious documentation to immigration authorities did not put the INS on notice that the Defendant was in the country illegally, as discussed further below.

_____

[3]    The Government received the results of the forensic examination of the passport stamps on January 4, 2007.  The examination report will be formally produced to the defendant shortly.

The Honorable Paul A. Crotty
January 6, 2008
Page 4 of 11

On April 4, 1999, the Defendant was arrested in Brooklyn, New York by the NYPD and charged with driving while intoxicated. Everdell Aff., Ex. D. On June 11, 1999, the Defendant pleaded guilty in Kings County Criminal Court to the lesser charge of driving with his ability impaired and was sentenced to a conditional discharge. *Id.* At no time before May 26, 2006, was the INS or its successor agency, U.S. Immigration and Customs Enforcement ("ICE"), notified that the Defendant had been arrested. Kilbride Decl. ¶ 10.

On May 26, 2006, ICE became aware that the Defendant was in the United States during a joint investigation with the New York State Division of Criminal Justice Services ("DCJS"), which houses New York State's criminal history fingerprint files. Kilbride Decl. ¶ 8. As part of that investigation, ICE provided DCJS with the names and deportation dates of thousands of aliens. *Id.* ¶ 9. By running this information through their databases, DCJS was able to identify a number of aliens who had been arrested in New York State after their deportation dates, including the Defendant. *Id.* ICE agents located the Defendant and arrested him on October 2, 2007. Id. ¶ 2.

## III. ARGUMENT

A.    **The Defendant's Motion To Dismiss The Indictment Based On Statute Of Limitations Grounds Should Be Dismissed As Premature Because The Factual Issues Raised Are More Appropriately Addressed At Trial.**

1.    Applicable Law

Rule 12(b)(2) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request which is capable of determination without the trial of the general issue." In a criminal case, the "general issue" is "whether the defendant is guilty of the offense charged." *United States* v. *Doe*, 63 F.3d 121, 125 (2d Cir. 1995). A defense is "capable of determination" under Rule 12(b)(2) if a "trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States* v. *Covington*, 395 U.S. 57, 1561 (1969).

In addition, when deciding a pre-trial motion to dismiss an indictment, the court must accept all factual allegations in the indictment as true. *See Boyce Motor Lines* v. *United States*, 342 U.S. 337, 343 n.16 (1952); *United States* v. *Velastegui*, 199 F.3d 590, 592 n.2 (2d Cir. 1999). Thus, districts courts generally should not inquire into the sufficiency of evidence prior to trial unless the government has made a full proffer of the evidence it plans to present. *United States* v. *Alfonso*, 143 F.3d 772, 777 (2d Cir. 1998). In other words, a court should not "usurp" the fact-finding function of the jury by resolving evidentiary issues properly reserved for trial in a motion to dismiss the indictment. *See United States* v. *Almonte*, No. 98 Cr. 666 (JFK), 1998 WL 782023, at *2 (S.D.N.Y. Nov. 6, 1998) (unpublished).

The Honorable Paul A. Crotty
January 6, 2008
Page 5 of 11

In *Alfonso*, for example, the Second Circuit reversed a district court's dismissal of an indictment, where the dismissal was based upon the government's failure to adduce sufficient facts to establish the interstate commerce element for a Hobbs Act robbery. *Alfonso*, 143 F.3d at 774, 777. The Second Circuit held that, "[t]o the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial . . . such an inquiry into the sufficiency of the evidence was premature." *Id.* at 776. The court instructed that, unless the government makes "a full proffer of the evidence" it intends to adduce at trial, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." *Id.* at 776-77. It further explained:

> In the case of a Hobbs Act prosecution, the requirement of an effect on interstate commerce is itself an element of the offense charged, and the determination of whether the jurisdictional element has been satisfied is part and parcel of the inquiry into the 'general issue.' . . . . "When a question of federal subject matter jurisdiction is intermeshed with questions going to the merits, the issue should be determined at trial . . . . This is clearly the case when the jurisdictional requirement is also a substantive element of the offense charged."

*Id.* at 777 (quoting *United States v. Ayarza-Garcia*, 819 F.2d 1043, 1048 (11th Cir. 1987)).

2.    Discussion

Like the issue of subject matter jurisdiction in *Alfonso*, the statute of limitations issue raised by the Defendant in the instant case is bound together with a substantive element of the offense charged in the Indictment. Being "found in" the United States is an element of the offense of illegal reentry; as such, the Government will be required to prove at trial when the Defendant was "found in" the United States. *United States v. Francisco*, No. 06 Cr. 791 (SAS), 2007 WL 2265147, at *3 (S.D.N.Y. Aug. 6, 2007) (unpublished) (citing 8 U.S.C. § 1326(a)).

As alleged in the Indictment, the Government maintains that the Defendant was "found in" the United States on or about May 26, 2006, when ICE became aware of the Defendant's presence in this country as part of their joint investigation with DCJS. Everdell Aff., Ex. J; Kilbride Decl. ¶ 8. In claiming that he was, in fact, "found in" the United States on April 8, 1992, the Defendant is challenging the sufficiency of the Government's proof as to that element of the charge. Hence, this is an issue of fact that should be left for the jury at trial to resolve. *See Alfonso*, 143 F.3d at 776-77. This is especially true where, as here, the facts related to the defendant's alleged entry into the United States on April 8, 1992 are clearly in dispute. *See Almonte,* 1998 WL 782023, at *2 (denying motion to dismiss because in "resolv[ing] the

The Honorable Paul A. Crotty
January 6, 2008
Page 6 of 11

question of when [d]efendant reentered the United States, [the Court] would be deciding the 'general issue in a criminal trial.'").[4]

In sum, the Defendant's motion to dismiss is premature, under Rule 12(b)(6) because it raises a defense that cannot be decided without a trial of "the general issue." Should the proof at trial indicate that the Defendant was "found in" the United States prior to the date alleged in the Indictment, the Defendant may reassert his statute of limitations claim at that time. *See United States v. Berger*, 22 F. Supp. 2d 145, 153 (S.D.N.Y. 1998).

**B.      Defendant's Arguments Would Fail On The Merits Because He Was Not Found In The United States Until May 26, 2006.**

Even if the Court decides to resolve when the Defendant was found in the United States, his statute of limitations argument should be denied as meritless. Defendant argues in the alternative that he was "found in" the United States either when he entered the country via Miami International Airport on April 8, 1992, or when he was arrested by the NYPD for driving while intoxicated on April 4, 1999. Def.'s Mot. at 2-4. As explained below, this argument fails because the Defendant was not "found in" the United States, as that term is interpreted under the illegal reentry statute, until May 26, 2006.

1.      Applicable Law

The statute of limitations in criminal cases begins to run when the crime is "complete." *Toussie v. United States*, 397 U.S. 112, 115 (1970). An offense committed under Title 8, United States Code, Section 1326 is complete upon the occurrence of one of three events: the alien (i) enters; (ii) attempts to enter; or (iii) is "found in" the United States. 8 U.S.C. § 1326(a)(2); *see United States v. Acevedo*, 229 F.3d 350, 355 (2d Cir. 2000). The offenses of "illegal re-entry" and "illegal attempt" are "normally uncomplicated" and are completed as soon as the alien has entered or attempted to re-enter the country. *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995). The offense of being "found in" the United States is "somewhat more complex, since it depends not only on the conduct of the alien but also on acts and knowledge of the federal authorities." *Id.*

---

[4]      The Court may resolve at this time the purely legal question raised by the Defendant's alternative statute of limitations argument; namely, whether the immigration authorities had constructive knowledge that Defendant was in the United States by virtue of his arrest for drunk driving on May 4, 1999. *See Francisco*, 2007 WL 2265147, at *3; *see also* Section B, *infra*. Nevertheless, the broader issue of whether the Government knew, or could have known, that the Defendant was in the United States prior to May 26, 2006, must be left for trial. *See id.*

The Honorable Paul A. Crotty
January 6, 2008
Page 7 of 11

The offense of being "found in" the United States in violation of Section 1326 "is not complete until the authorities both discover the illegal alien in the United States, . . . and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence." *Rivera-Ventura*, 72 F.3d at 282 (citations omitted); *accord United States* v. *Mercedes*, 287 F.3d 47, 54 (2d Cir. 2002); *Acevedo*, 229 F.3d at 355.

Accordingly, an alien who "enter[s] through a recognized port by means of specious documentation that conceals the illegality of his presence," is not "found in" the United States, and therefore does not trigger the statute of limitations upon entry. *Rivera-Ventura*, 72 F.3d at 281-82 (citations omitted); *Acevedo*, 229 F.3d at 350. Such entry by means of "specious documentation" includes the presentation of an invalid green card to immigration authorities to obtain entry into the United States, *see Acevedo*, 229 F.3d at 355-56; *Almonte*, 1998 WL 782023, at *2-*3, as well as the presentation of other false or misleading documents. *See United States* v. *Ortiz-Villegas*, 49 F.3d 1435, 1437 (9th Cir. 1995) (invalid California driver's license); *United States* v. *Gomez*, 38 F.3d 1031, 1036-37 (8th Cir. 1994) (fraudulent immigration application); *United States* v. *Gay*, 7 F.3d 200, 200-02 (11th Cir. 1993) (invalid passport); *United States* v. *Whittaker*, 999 F.2d 38, 42 (2d Cir. 1993) (documents containing a fictitious name).

Furthermore, in marking when the statute of limitations begins to run, it is the knowledge of the *federal immigration authorities* that matters. *See Acevedo*, 229 F.3d at 356. Knowledge by state officials about a defendant's whereabouts or status cannot be imputed to them. *See Mercedes*, 287 F.3d at 55 (refusing to "adopt a rule that would make the INS responsible for any immigration-related information discovered in state investigations of the hundreds of thousands of prisoners in state custody at any given time"); *Acevedo*, 229 F.3d at 356 (despite arrest by New York State authorities in 1993 and 1994, alien was not "found" for purposes of limitations period until INS learned of his presence in 1995); *Francisco*, 2007 WL 2265147, at *2 (knowledge by state officials about a defendant's presence in the United States cannot be imputed to the federal government); *United States* v. *Manners*, No. 06 Cr. 1162 (NRB), 2007 WL 1406620, at *2 (S.D.N.Y. May 9, 2007) (unpublished) (denying motion to dismiss based on a 1999 arrest by New York state authorities); *see also United States* v. *Clarke*, 312 F.3d 1343, 1347 (11th Cir. 2002) (rejecting argument that knowledge of state officials "can be imputed to the INS and therefore is sufficient to start the running of the five-year statute of limitations").

2.    Discussion

Assuming, *arguendo*, that the Defendant did enter the United States at Miami International Airport on April 8, 1992, the record clearly establishes that he was not "found in" the United States on that date because he entered by means of specious documentation. The stamps on the Defendant's passport bear the notation "ARC," which stands for "alien registration card." Everdell Aff, Ex. I; Kilbride Decl. ¶ 11. That notation indicates that the Defendant presented a green card to the immigration officials at Miami airport in order to gain entry to the

The Honorable Paul A. Crotty
January 6, 2008
Page 8 of 11

United States. Kilbride Decl. ¶ 11; *Almonte*, 1998 WL 782023, at *2. The Defendant, himself, states that this is how he achieved entry. Def.'s Mot. at 2. However, because the defendant was issued only one green card – the one he received after his initial arrival into the United States, which should have been surrendered following his deportation, *see* Kilbride Decl. ¶ 3f – the Defendant must have presented his old, invalid green card as if it were still valid. Indeed, by admitting that his reentry was illegal, *see* Def.'s Mot. at 3, the Defendant effectively concedes that the green card he presented was invalid. Such specious documentation did not suffice to put the immigration authorities on notice that the Defendant's presence in the United States was illegal, and therefore did not trigger the statute of limitations. *Acevedo*, 229 F.3d at 355-56; *Almonte*, 1998 WL 782023, at *2-*3.

The facts of this case are almost identical to those of *Acevedo* and *Almonte*. In both cases, the defendants gained entry into the United States in June 1991 and May 1991, respectively, by presenting an invalid green card, along with a valid Dominican passport, to airport immigration officials. *Acevedo*, 229 F.3d at 353-54; *Almonte*, 1998 WL 782023, at *1-*2. In each case, the court determined that the defendant was not "found in" the United States at the time of his entry, and that statute of limitations therefore did not begin to run, because the immigration authorities lacked notice that his presence was illegal. *Acevedo*, 229 F.3d at 355-56; *Almonte*, 1998 WL 782023, at *2-*3.[5]

Furthermore, the case principally relied upon by the Defendant in support of his first statute of limitations argument, *United States* v. *DeSantillo*, 615 F.2d 128 (3d Cir. 1980), can be distinguished. *See Almonte*, 1998 WL 782023, at *3 (finding *DiSantillo* factually distinguishable). In *DeSantillo*, the defendant, after being deported, applied for and was mistakenly granted a visa for which he was not eligible, which he then used to enter the United States non-surreptitiously through a recognized immigration port of entry. *Id.* at 135-36. Hence, in *DeSantillo*, unlike the instant case, immigration authorities were on notice of both the defendant's presence in the country and his illegal status, which triggered the statute of limitations.

---

[5]     Although the Defendant argues that federal immigration authorities could have discovered his illegal reentry "through the exercise of due diligence," Def.'s Mot. at 3, he does not provide the Court with any basis to find that federal immigration authorities in 1992 had the appropriate equipment to discover the defendant's prior deportation. In fact, there is reason to believe that they did not possess the necessary technology at that time. *See Acevedo*, 229 F.3d at 355-56; *Almonte*, 1998 WL 782023, at *3. Accordingly, the Court need not address the issue of diligence at this time. *See Acevedo*, 229 F.3d at 355-56. As discussed above, the determination of when the Government could have known about the Defendant's presence through the exercise of due diligence is properly left for the jury at trial. *See Francisco*, 2007 WL 2265147, at *3.

The Honorable Paul A. Crotty
January 6, 2008
Page 9 of 11

The Defendant was also not "found in" the United States when he was arrested by the NYPD for drunk driving on April 4, 1999. In this context, the statute of limitations does not begin running until state officials notify federal immigration authorities of the defendant's incarceration. *See Acevedo*, 229 F.3d at 356. As the cases cited above show, courts in this Circuit have squarely rejected the argument that the knowledge of state officials can be imputed to federal immigration authorities. The first time that ICE became aware that the Defendant had returned to the United States illegally was on May 26, 2006, in connection with its joint investigation with DCJS. Kilbride Decl. ¶ 8. Prior to that time, INS and ICE had no reason to believe that the Defendant was back in the United States. *Id.* ¶ 10. Accordingly, the Defendant was not "found in" the United States at the time of his 1999 arrest.

For these reasons, the statute of limitations did not begin to run until May 26, 2006, when ICE first became aware of the Defendant's arrest and presence in the United States. Accordingly, the Indictment was filed well within the applicable limitations period. Should the Court rule on the merits of the Defendant's motion to dismiss the Indictment as time-barred, the motion should be denied.

C.     **The Defendant's Claim That The Indictment Does Not Allege An Aggravated Felony Should Be Raised At Sentencing And Is Meritless**

The Defendant claims that the Government lacks a legal basis to charge him with an "aggravated felony" under Title 8, United States Code, Section 1326(b)(2), because the felony of which he was convicted – assault in the first degree – did not qualify as an aggravated felony as that term was defined under Title 8, United States Code, Section 1101(a)(43) at the time he was deported in 1988. The Court should disregard this argument, as it raises a sentencing issue that is not properly brought as part of a motion to dismiss, and, in any event, is meritless.

1.     Applicable Law / Discussion

The Second Circuit recently reaffirmed, in light of the Supreme Court's decision in *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), that Title 8, United States Code, Section 1326(b) is "a penalty provision which simply authorizes a court to increase the sentence for a recidivist and did not define a separate crime." *Mercedes*, 287 F.3d at 58 (quoting *Almendarez-Torres* v. *United States*, 523 U.S. 224 (1998) (quotation marks omitted)); *see also United States* v. *Cole*, 32 F.3d 16, 18 (2d Cir. 1994) (pre-*Apprendi* case holding that Section 1326(b) does not set forth a separate crime, but is a sentencing-enhancement provision). Accordingly, the Government is not required to allege in the indictment, or prove at trial, the aggravated felony that it intends to use to enhance the defendant's sentence, because it is not an element of the offense of illegal reentry. *See Mercedes*, 287 F.3d at 58; *Cole*, 32 F.3d at 19; *United States* v. *Henry*, No. 03 Cr. 1307 (DAB), 2004 WL 652337, at *2 (S.D.N.Y. Apr. 1, 2004) (unpublished). Any motion by the

The Honorable Paul A. Crotty
January 6, 2008
Page 10 of 11

Defendant regarding the aggravated felony charged in the Indictment therefore should not be brought as part of a motion to dismiss the Indictment, but rather should be raised at sentencing.

Furthermore, the Defendant's claim that his November 12, 1986 conviction for assault in the first degree cannot provide the basis for an aggravated felony enhancement under Section 1326(b) is meritless. Prior to 1996, a crime of violence did not qualify as an "aggravated felony" unless the defendant received a sentence of imprisonment of five years or more. In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Section 321 of IIRIRA, which became effective on September 30, 1996, and amended the definition of "aggravated felony" in Title 8, United States Code, Section 1101(a)(43) to include crimes of violence for which the defendant received a sentence of at least one year. IIRIRA, Pub. L. No. 104-208, § 321, 110 Stat. 3009-627 to 3009-628. IIRIRA also specifically provided that "the new definition of aggravated felony is to be used regardless of whether the conviction for the offense included in the definition was entered before, on, or after the September 30, 1996 effective date of IIRIRA." *United States* v. *Luna-Reynoso*, 258 F.3d 111, 114 (2d Cir. 2001) (citing IIRIRA) (quotation marks omitted). Hence, because the Defendant completed the crime of illegal reentry when he was "found in" the United States on May 26, 2006, which was after the effective date of IIRIRA, the Defendant's 1986 conviction for assault in the first degree qualifies as an aggravated felony that can enhance his sentence. *See Luna-Reynoso*, 258 F.3d at 114-16; *Gordon* v. *United States*, No. 99 Cr. 819 (JFK), 2001 WL 913903, at *2 (S.D.N.Y. Aug. 14, 2001).

The Honorable Paul A. Crotty
January 6, 2008
Page 11 of 11

## III. CONCLUSION

For the reasons stated above, the Court should deny Defendant's motion to dismiss the Indictment.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:     /s/ Christian R. Everdell
        Christian R. Everdell
        Assistant United States Attorney
        Southern District of New York
        (212) 637-2556

cc:     Susanna Abarca, Esq.