# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                :      <u>DECLARATION</u>

      - v. -                         :      07 Cr. 964 (PAC)

DANIEL DEJESUS CEDENO,                   :

      Defendant.                     :

- - - - - - - - - - - - - - - - - x

STATE OF NEW YORK            )
COUNTY OF NEW YORK           ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

      THOMAS J. KILBRIDE, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury:

      1. I am a Senior Special Agent with U.S. Immigration and Customs Enforcement ("ICE"). I have been employed by ICE for approximately seventeen years.

      2. I am the case agent for the case of <u>United States v. Daniel DeJesus Cedeno</u>, 07 Cr. 964 (PAC). In connection with that case, I was personally involved in the investigation leading up to Cedeno's detention by ICE agents on October 2, 2007.

      3. I have reviewed the files maintained by ICE for the defendant, Daniel DeJesus Cedeno, including the defendant's alien file ("A-File"). From my review of those records and my experience as an ICE agent, I know the following:

      a. On or about April 2, 1983, the defendant's mother, Miledys Altagracia Medina, who was a lawful permanent resident of the United States, submitted a P2-2 visa application

for the defendant to come live with her in the United States.

      b.   P2-2 visa applications are available to an unmarried son or daughter of an alien resident in the United States.

      c.   The application was granted and Cedeno entered the United States on or about November 20, 1983, and was eventually issued a resident alien card ("green card").

      d.   On or about November 12, 1986, the defendant was convicted of assault in the first degree in New York Supreme Court, Kings County.

      e.   As a result of that conviction, the defendant was found deportable by an immigration judge and deported from the United States on or about September 12, 1988.

      f.   Under federal regulations, the defendant's green card became invalid at the time he was found deportable, and he was required to surrender his green card to immigration authorities prior to his deportation.

      g.   No record was found to exist in the defendant's A-File, or in any of the databases maintained by ICE, that the defendant ever surrendered his green card to immigration authorities.

      h.   No record was found to exist in these same records that the defendant was ever issued a new green card to replace the invalid one.

4.  ICE maintains centralized records relating to immigrant aliens who entered the United States on or after June 30, 1924, to non-immigrant aliens who entered on or after June 30, 1948, and a centralized index of all persons naturalized on or after September 27, 1906.

5.  ICE performed a search of records relating to the defendant in the above-referenced case, Daniel DeJesus Cedeno. Specifically, ICE searched Deportable Alien Control System (DACS), Computer Linked Application Information Management System (CLAIMS), Treasury Enforcement Communication System (TECS), and the Central Index System (CIS).

6.  After a diligent search was performed by ICE in these database systems, no record was found to exist indicating that Daniel DeJesus Cedeno obtained consent at anytime prior to March 1, 2003, from the Attorney General of the United States, or at anytime after February 28, 2003 from the Secretary of the Department of Homeland Security, for re-admission in the United States.

7.  After a diligent search was performed by ICE in these database systems, no record was found to exist indicating that Daniel DeJesus Cedeno reentered the United States after his lawful deportation on September 12, 1988. Specifically, no record was found to exist indicating that the defendant reentered the United States via Miami International Airport on July 5,

1990, or April 8, 1992.

      8.   ICE first became aware that Daniel DeJesus Cedeno had illegally reentered the United States on or about May 26, 2006, as part of a joint investigation with the New York State Division of Criminal Justice Services ("DCJS"), which houses New York State's criminal history fingerprint files.

      9.   As part of that investigation, ICE provided DCJS with the names and deportation dates of thousands of aliens. DCJS ran the information provided through their databases and identified a number of aliens who had been arrested in New York State after their deportation dates. Daniel DeJesus Cedeno, the defendant, was one of the aliens identified.

      10.   At no time prior to May 26, 2006, was ICE notified that the defendant had been arrested or was otherwise back in the United States.

      11.   I have reviewed the passport stamps provided by the defendant that purport to show that he reentered the United States via Miami International Airport on July 5, 1990, and on April 8, 1992. I know from my experience as an ICE agent that the notation "ARC" stands for "alien registration card," and signifies that the holder of the passport presented a green card to immigration officials in order to obtain entry into the United States.

      I declare under penalty of perjury that the foregoing is true and correct.

Dated:    New York, New York
             January 4, 2008

                                        /s/ Thomas J. Kilbride
                                 THOMAS J. KILBRIDE
                                 Senior Special Agent
                                 U.S. Immigration and Customs Enforcement